IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 05-23141-CIV-MOORE/GARBER

IVX ANIMAL HEALTH, INC.,

        Plaintiff,

vs.

JOHN A. BURGER, an individual,

        Defendants.
_____/

*CLOSED CIVIL CASE*

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION / SUBJECT MATTER JURISDICTION, OR, IN THE ALTERNATIVE, MOTION FOR TRANSFER

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss for Lack of Personal Jurisdiction / Subject Matter Jurisdiction, or in the Alternative, Motion for Transfer (DE #38). Plaintiff has filed a Response in Opposition (DE # 50), and Defendant filed a Reply (DE # 61).

UPON CONSIDERATION of the motion, the relevant portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### I. BACKGROUND

Plaintiff IVX Animal Health, ("Plaintiff" or "IVX") is a corporation "organized and existing under the laws of Delaware," and is "engaged in the development, production and sale of pharmaceutical and nutraceutical products used to treat animals, including domestic and farm animals." Compl. at 2. Among the products sold by Plaintiff are "dietary supplements for animals called Synovi, which are used to promote joint health and mobility." Id. Between December 2003 and December 2005, Plaintiffs received several letters from the Defendant, Dr.

John A. Burger ("Defendant" or "Burger"), claiming that Synovi products were covered by Burger's patent, U.S. Patent No. 5,843,919 ("the Patent"). Def. Mot., Ex. B. Defendant continually offered to discuss licensing possibilities for the Patent. Id. Subsequent to some communication between the parties, Plaintiff filed this action seeking declarations that its Synovi products do not infringe the claims of the Patent, and that all claims of the Patent are invalid and unenforceable. Compl. at 1.

Defendant filed a Motion to Dismiss (DE # 12) on April 26, 2006, claiming this Court lacked both personal and subject matter jurisdiction. After a Response (DE # 21) and a Reply (DE # 25), this Court filed an Order (DE # 29) on July 6, 2006, denying the Motion to Dismiss without prejudice, and requiring additional discovery on the issue of jurisdiction. Jurisdictional discovery completed, Defendant filed his Second Motion to Dismiss (DE # 38) on November 16, 2006. As the parties have fully briefed the issues of Personal and Subject Matter Jurisdiction raised by the Motion to Dismiss, this Court enters the following Order.

## II. DISCUSSION

### A) Subject Matter Jurisdiction

As the Eleventh Circuit explained in Morrisson v. Amway Corp.:

> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

323 F.3d 920, 925 n.5 (11th Cir. 2003). Here, the Plaintiff's Motion to Dismiss is a factual attack because it relies on extrinsic evidence and does not assert lack of subject matter

jurisdiction solely on the basis of the pleadings. Therefore, this Court will consider the extrinsic evidence submitted by the parties. Additionally, this Court notes that when the attack is factual,

> the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

A declaratory judgment action does not, by itself, provide jurisdiction. "The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction." Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 633-34 (Fed. Cir. 1991), cert. denied, 502 U.S. 1013 (1991); see 28 U.S.C. §2201(a) (declaratory relief available "[i]n a case of actual controversy within [the court's] jurisdiction"). Defendant claims that no actual controversy exists. Def. Mot. at 14. The burden of proof for this issue falls to the declaratory judgment plaintiff. West Interactive Corp. v. First Data Resources, 972 F.2d 1295, 1297 (Fed. Cir. 1992); Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399 (Fed. Cir. 1984). This Court must consider two factors in deciding whether there was an actual controversy creating subject matter jurisdiction over this action at the time the complaint was filed:

> 1) "[T]he defendant's conduct must have created on the part of the plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity."
> 2) "[T]he plaintiff must actually have either produced the device or have prepared to produce the device."

West Interactive Corp., 972 F.2d at 1297; Goodyear Tire & Rubber Co. v. Releasomers, Inc.,

824 F.2d 953, 955 (Fed. Cir. 1987).

Plaintiff admits to producing and selling the Synovi products, which Defendant alleged were covered by the Patent. Compl. at 2. The second factor is therefore satisfied. As to the first factor, Plaintiff claims Defendant's letters to the Plaintiff suffice. Pl. Resp. at 17. Plaintiff supplies those letters as Exhibit B to its Reply (DE # 50-3). Plaintiff argues that these letters were threats of litigation. Defendant interprets them as attempts to negotiate a license agreement. Pl. Mot. at 15-16. The issue at hand is whether Plaintiff's letters created "an objectively reasonable apprehension that suit will be brought against the declaratory plaintiff." Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995).

Three of the cases cited by the parties illustrate the gamut of interactions between patent holder and alleged infringer. In GAF Building Materials Corp. v. Elk Corp. of Dallas, Elk, in anticipation of the imminent approval of its patent, contacted GAF "asserting that GAF's sales of its roofing shingle would 'constitute an infringement of Elk Corporation's forthcoming United States design patent' . . . and demand[ing] that GAF 'cease and desist from all infringing activities with respect to this United States design patent when issued'." 90 F.3d 479, 480 (Fed. Cir. 1996). In response, GAF filed an action in the District of New Jersey, seeking a declaratory judgment. Id. Elk later sued GAF for infringement in the Northern District of Texas, on the morning Elk's patent was issued. Id. The Federal Circuit noted that GAF did have a "reasonable apprehension that it would be sued for patent infringement" because "Elk's . . . letter unmistakably notified GAF that Elk intended to sue GAF for infringement if GAF did not stop marketing the accused product," and "[a] demand to cease and desist is a threat." Id. at 481-82. However, the GAF court held that there was no actual controversy at the time the declaratory

4

judgment was filed, as Elk did not have a valid patent at that time, making the dispute "purely hypothetical." Id. at 482.

In EMC Corp. v. Norand Corp., Norand's representative sent a letter to EMC "suggesting license negotiations related to Norand's patents." 89 F.3d 807, 809 (Fed. Cir. 1996). In a subsequent letter, Norand's representative "stated that Norand had 'requested that we simply turn the matter over to [Norand's outside patent counsel] for action,' but that he wanted to have a preliminary business discussion, 'perhaps avoiding this matter escalating into a contentious legal activity'." Id. The EMC court held that it must look at the substance and context of the communications between the parties to determine whether the patent holder's conduct created a "reasonable apprehension" of litigation. Id. at 811-12. In its thorough discussion of the standard for determining the existence of the required controversy, the EMC court noted that while no express charge of infringement or threat of suit was necessary, an offer of a license was, by itself, insufficient to establish the required controversy, as were "proposed or ongoing license negotiations." Id. at 811 (internal quotation and citation omitted). That court acknowledged that "any time parties are in negotiation over patent rights, the possibility of a lawsuit looms in the background," and that it would be unrealistic to require a negotiating party to declare an intention not to enforce a patent. Id.

The EMC court found that the letters describing Norand's desire to litigate immediately, "made it reasonably clear that Norand intended to resort to litigation if it were not satisfied with the results of the parties' negotiations," and supported a finding that there was an actual case or controversy. Id. at 812-13. That court also took into consideration its evaluation that Norand's licensing proposal was unlikely to be accepted and made "the prospect of ultimate litigation even

more realistic." Id. at 813. However, the parties had engaged in discussion, and held several negotiating meetings. Id. at 809. The district court had found the parties to be in "active license or sale negotiations" when EMC filed the declaratory judgment action. Id. In the end, the EMC court supported the decision of the lower court to decline to exercise jurisdiction, as the circumstances indicated that the parties were negotiating, and the declaratory judgement action appeared to be a "tactical measure" intended to improve the plaintiff's bargaining position. Id. at 815.

Finally, in Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, the Federal Circuit held that no actual controversy existed where the patent holder, Kato, approached Phillips with an offer to negotiate for a license for certain products made by Phillips (and later, by the party to which Phillips sold its fastener business) which Kato claimed were "covered by" Kato's patent. 57 F.3d 1051, 1052 (Fed. Cir. 1995). The Phillips court held that "to create an actual controversy there must be more than ongoing license negotiations." Id. at 1053. That court further held that "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down," and found that "neither party had terminated 'fruitless' license discussions." Id. at 1054.

The facts in the case before this Court bear similarities to both EMC and Phillips. The Defendant's letters do mention the prospect of litigation but, unlike the EMC letters, do not illustrate an intention to sue, either immediately or at the termination of unsatisfactory negotiations. Plaintiff argues that the two references to litigation in the Defendant's letters created the required objectively reasonable apprehension of a lawsuit. Pl. Resp. at 17. The first such reference appears in the letter dated August 30, 2005. Pl. Resp. Ex. B at 36 (DE # 50-4).

To place the reference in context, one must also read the preceding paragraph:

> As you know, a patent is presumed to be valid unless and until it has been ruled to be invalid. Your company may attempt to invalidate the Burger patent or have it ruled to be unenforceable by means of a reexamination or litigation proceeding. It is our view that any such proceeding will be ineffectual and that the patent will be found to be valid and enforceable.
>
> Bearing in mind that licensing the Burger patent will also be much less expensive for your company than litigating would be, it seems clear to us that obtaining a license and paying royalties for the right to operate under the Burger patent would be beneficial to both parties. We therefore repeat our offer . . . of a non-exclusive license to make, use, and sell products that are covered by claims of the Burger patent. It is our preference to deal amicably with potential licensees and to provide an atmosphere conducive to a long term relationship.

Id. at 36-37. In context, the prospective litigation referred to in the August 30th letter is an action by the plaintiffs to invalidate the patent, rather than an action by the patent holder to enforce it.

The other reference to litigation in the letters appears in the subsequent letter from the Defendant's attorney. The November 15, 2006 letter refers to the lack of a response to the prior letter and continues: "[i]n our letter, we also repeated our offer to your company to obtain a license under the Burger patent, which would be a cost-effective alternative to litigating and would provide an atmosphere conducive to a long-term relationship between your company and mine." Pl. Resp. Ex. B at 39. The November 15 letter then repeats the invitation to discuss licensing arrangements. Id. at 39-40. These references to the possibility of litigation do not raise an "objectively reasonable apprehension that suit will be brought against the declaratory plaintiff." Phillips Plastics Corp., 57 F.3d at 1053.

This action was filed approximately three weeks after the November 15th letter, on December 5, 2005. However, licensing negotiations continued. In its Motion for Enlargement of

Time to Hold a Scheduling Conference (DE # 3), filed February 1, 2006, Plaintiff requested an extension of the deadline because it had not yet served the Defendant, "due to initial discussions relating to a possible resolution of the case." Mot. for Enlargement at 2. Those "initial discussions" included licence negotiations, as evidenced by a letter dated December 15, 2005, included by the Defendant and notably omitted from Plaintiff's exhibit, in which Plaintiff's attorney wrote: "[t]his is a follow-up to our conversation this morning during which you made a negotiation offer regarding obtaining a license for your client, IVX Animal Health, to operate under the Burger patent." Def. Mot., Ex. B at 15 (DE # 38-3).

Defendant first contacted the Plaintiff's predecessor, DVM Pharmaceuticals, about the license in a letter dated December 3, 2003. Pl. Resp. Ex. B at 3. Defendant communicated with Plaintiff periodically from that date until after this action was filed. See generally, id. The Defendant's letters all proposed licensing agreement negotiations. Id. Two of the last letters emphasized a desire to come to an amicable and long-term agreement. Id. at 34-37, Def. Mot., Ex. B at 15. The Defendant's letters show no sign of impatience with negotiations, or their lack of progress, over the course of two years. This Court follows the holding in Phillips that "[w]hen there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." 57 F.3d at 1054. And here, as in Phillips, "neither party had terminated 'fruitless' license discussions" before Plaintiff filed suit. Id., at 1053. While the language in these letters is slightly stronger than the language at issue in Phillips, parties are allowed a certain amount of "'jawboning' which typically occurs in licensing negotiations," Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992), and this Court finds that this Defendant, like the defendant in Phillips, sought "a commercial, not a judicial,

8

remedy." Phillips, 57 F.3d at 1053.

Accordingly, this Court finds that at the time this case was filed, the defendant's conduct did not create "a reasonable apprehension that the defendant [would] initiate suit if the plaintiff continue[d] the allegedly infringing activity." West Interactive Corp., 972 F.2d at 1297. Therefore, this Court finds there was no actual controversy at that time, leaving this Court without subject matter jurisdiction over this action. Accordingly, this Court will not address the issue of Personal Jurisdiction over the Defendant.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE # 38) is GRANTED. This case is DISMISSED. The clerk is instructed to CLOSE this case. All pending motions not yet ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 22nd day of February, 2007.

_____
K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record
U.S. Magistrate Judge Barry L. Garber